IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYCE EDWARD HANSEN,<br>     ID # 54350-177,<br>          Movant, | )<br>)<br>) | |
| | ) | No. 3:19-CV-3065-L-BH |
| vs. | ) | No. 3:16-CR-287-L(1) |
| | ) | |
| UNITED STATES OF AMERICA,<br>          Respondent. | )<br>) | Referred to U.S. Magistrate Judge[1] |

FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Based on the relevant filings and applicable law, the *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 30, 2019 (doc. 1), should be **DENIED** with prejudice.

## I. BACKGROUND

Bryce Edward Hansen (Movant) challenges his federal conviction and sentence in Cause No. 3:16-CR-287-L(1). The respondent is the United States of America (Government).

### A. Conviction and Sentencing

After first being charged by complaint, Movant was charged by indictment on June 22, 2016 with being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count One); possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) (Count Two); and maintaining a drug-involved premises in violation of 18 U.S.C. § 856(a)(1) (Count Three). (*See* docs. 1, 9.)[2] The indictment also had a forfeiture notice, which provided that upon conviction for either of the offenses charged

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Unless otherwise noted, all document numbers refer to the docket number assigned in the underlying criminal action, No. 3:16-CR-287-L(1).

in Count Two or Count Three and pursuant to 21 U.S.C. § 853(a), Movant would forfeit $9,144.00 in United States currency. (*See* doc. 9 at 4-5.) He pled guilty to Counts One and Two of the indictment on March 7, 2017, under a plea agreement. (*See* docs. 21, 25.)

In his plea agreement, Movant stated that he understood and waived his rights to plead not guilty, to have a trial by jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses, and to not be compelled to incriminate himself. (*See* doc. 21 at 1.)[3] He agreed that he understood the nature and elements of the crimes to which he was pleading guilty, and that the factual resume he signed was true and would be submitted as evidence. (*See id.*) The plea agreement set out the maximum penalties for Count One if Movant had at least three prior convictions that qualified under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), and the maximum penalties if he did not have qualifying prior convictions, and the maximum penalties for Count Two. (*See id.* at 2-3.) It also stated that Movant had reviewed the federal sentencing guidelines with counsel, that he understood his sentence would be imposed by the Court after consideration of the sentencing guidelines, which were advisory and not binding, and that no one could predict with certainty the outcome of the Court's consideration of the guidelines. (*See id.* at 3-4.) He understood that the Court had sole discretion to impose the sentence. (*See id.* at 4.) He had thoroughly reviewed all legal and factual aspects of the case with counsel and believed that it was in his best interest to enter into the plea agreement and plead guilty. (*See id.* at 6-7.) The guilty pleas were freely and voluntarily made, and not the result of force or threats, or of promises apart from those included in the plea agreement. (*See id.* at 6.)

Movant also waived his right to appeal his conviction and sentence and his right to contest his conviction and sentence in a collateral proceeding, except that he reserved the right (a) to bring

---

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

a direct appeal of a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing, (b) to challenge the voluntariness of his guilty plea or the appeal waiver, and (c) to bring a claim of ineffective assistance of counsel. (*See id.*) He also agreed not to contest, challenge, or appeal in any way the forfeiture of any property noted as subject to the indictment's forfeiture notice or seized or restrained by law enforcement during his case. (*See id.* at 5.) In exchange for Movant's guilty pleas, the Government agreed not to bring any additional charges against him based on the underlying conduct and related to his guilty pleas, and to dismiss any remaining charges against him in the pending indictment after sentencing. (*See id.*)

At his re-arraignment on March 7, 2017, Movant acknowledged under oath that he had reviewed the plea agreement and factual resume in detail with counsel, that he understood everything contained in the plea documents and each of the essential elements of Counts One and Two, and that the essential elements of both counts were satisfied in his case. (*See* doc. 57 at 14-16, 23-24.) He also acknowledged that he understood the rights he was giving up by pleading guilty, that he was waiving his right to appeal from or challenge his conviction except in the limited circumstances set forth in the plea agreement, and that he was waiving his rights to challenge, contest, or appeal any forfeiture to the Government of his property as stated in the plea agreement. (*See id.* at 4-6, 17-19.) He was advised that the sentencing guidelines were advisory and the Court had the authority to impose a sentence within, above, or below the applicable guidelines range, and he affirmed that he had discussed with his attorney how the sentencing guidelines might apply in his case; he understood that he should not depend or rely on any statement or promise by anyone as to what penalty would be assessed against him. (*See id.* at 7-10.) He also understood that the Court would determine his sentence after consideration of the sentencing guidelines and a Presentence Investigation Report (PSR), and evidence presented at sentencing. (*See id.* at 6-7.) He

affirmed that he had voluntarily entered into the plea agreement, and other than the written plea agreement, no one made any promise or assurance to him to induce him to plead guilty. (*See id.* at 18-19.)

Movant was advised that by pleading guilty to Count One, he was subjecting himself to a minimum and maximum period of imprisonment of 15 years to life, a term of supervised release of not more than five years, forfeiture of property, and other monetary costs and penalties if he had at least three prior convictions that qualified under ACCA; if not, he was subjecting himself to a maximum period of imprisonment of 10 years, a term of supervised release of not more than three years, forfeiture of property, and other monetary costs and penalties. (*See id.* at 19-21.) Movant understood that by pleading guilty to Count One, he was subject to these penalties and consequences, including the contingent penalties under ACCA. (*See id.* at 21.) He also understood that by pleading guilty to Count Two, he was subjecting himself to a period of imprisonment of ten years to life, a term of supervised release from five years to life, and other monetary costs and penalties. (*See id.* at 21-22.) He understood that if his sentence was more severe than he expected, he would still be bound by his guilty plea. (*See id.* at 22.) Movant pled guilty to both counts, and the Court found that his guilty pleas were knowing and voluntary. (*See id.* at 23-24; docs. 27, 29.)

On May 18, 2017, the United States Probation Office (USPO) prepared a PSR in which it applied the 2016 United States Sentencing Guidelines Manual. (*See* doc. 31-1 at ¶ 27.) The PSR grouped the two counts together and calculated the base offense level by using the Drug Quantity Table under U.S.S.G. § 2D1.1(c)(2). (*See id.* at ¶¶ 29-32.) Movant was held accountable for a total of 2.2 kilograms of methamphetamine, comprised of 1,305 grams of methamphetamine found at his storage unit, 84.43 grams of methamphetamine found at his residence, and 877.8 grams of methamphetamine converted from the $9,144 found at hi his residence. (*See id.* at ¶¶ 13, 17-18.)

Because the offense involved at least 1.5 kilograms of methamphetamine, but less than 4.5 kilograms, the base offense level was 36. (*See id.* at ¶ 32.) Two levels were added for possession of a firearm, two levels were added for maintaining a premises for the purpose of storing a controlled substance for distribution and manufacturing, and three levels were deducted for acceptance of responsibility, resulting in a total offense level of 37. (*See id.* at ¶¶ 33-34, 40-42.) Based on a total offense level of 37 and a criminal history category of VI, the resulting guideline imprisonment range was 360 months to life. (*See id.* at ¶ 95.)

On June 2, 2017, both sides objected to the PSR. (*See* docs. 32-33.) The Government objected on the ground that it failed to reflect that Movant was an armed career criminal under ACCA because he had at least three prior convictions for qualifying serious drug offenses. (*See* doc. 32.) Movant objected to the conversion of his seized currency into methamphetamine, the total amount of methamphetamine for which he was held accountable, the enhancements for possession of a firearm and for maintaining a premises, and the calculation of his criminal history points, and on other grounds that did not affect the guidelines calculation. (*See* doc. 33.)

The USPO submitted an addendum to the PSR on June 19, 2017, in which it addressed the objections. (*See* doc. 34-1.) The addendum accepted the Government's objection that Movant qualified as an armed career criminal under ACCA. (*See id.* at 1.) It rejected all but part of one of the objections potentially affecting the guidelines calculation and supported the PSR as written, and it accepted part of Movant's objections to the calculation of his criminal history points, but the change did not affect his criminal history score or the overall guidelines calculation. (*See id.* at 2-5.) Based on the acceptance of the Government's objection, the addendum applied the armed career criminal provisions of U.S.S.G. § 4B1.4. (*See id.* at ¶ 39.) The total offense level and criminal history category remained unchanged, resulting in the same guideline imprisonment range

of 360 months to life. (*See id.* at ¶ 95.) Because of the armed career criminal enhancement, however, the statutory range of imprisonment for Count One became 15 years to life, rather than the maximum term of 10 years' imprisonment for that count without the enhancement. (*See id.*; doc. 31-1 at ¶ 94.) On September 15, 2017, the USPO issued a second addendum to the PSR to correct typographical and date errors. (*See* doc. 39-1.)

Movant's first sentencing hearing, scheduled for September 25, 2017, was reset after the Government was unwilling to proceed because Movant was contesting the forfeiture of the $9,144 seized from his residence, in alleged violation of the plea agreement. (*See* doc. 64 at 4-6, 11, 13-14.) At the second sentencing hearing on October 5, 2017, the Government stated it had filed a notice of Movant's withdrawal of the administrative claim that was at issue in the first sentencing hearing. (*See* doc. 65 at 4.) Regarding the Government's objection to the PSR on the application of ACCA, the parties agreed that it applied to Movant. (*See id.* at 5-8.) The Court admitted evidence and heard arguments and testimony on Movant's objections to the PSR's conversion of the seized $9,144 into methamphetamine, enhancements for possessing a firearm and for maintaining a drug premises, determination of the drug quantity amount, and calculation of Movant's criminal history points and total offense level. (*See id.* at 9-39.) These objections were overruled. (*See id.* at 23, 30, 34, 38-39.) By judgment dated October 5, 2017, Movant was sentenced to a total concurrent term of 300 months' imprisonment, to be followed by a five-year term of supervised release. (*See* doc. 46 at 1-3.)

On appeal, appellate counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on October 8, 2018. *See United States v. Hansen*, 739 F. App'x 291 (5th Cir. 2018). Movant did not file a petition for a writ of certiorari with the Supreme Court.

B. <u>**Substantive Claim**</u>

Movant's § 2255 motion states the following ground for relief:

Counsel's Erroneous Pre-Plea Advice Resulted In [Movant] Entering An Unknowing and Involuntary Guilty Plea.

(No. 3:19-CV-3065-L-BH, doc. 1 at 4.) The Government filed a response on March 27, 2020. (*See id.*, doc. 6.) Movant filed a reply on April 23, 2020. (*See id.*, doc. 7.)

## II. SCOPE OF RELIEF UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (en banc) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[ ] objectives" of the procedural default doctrine "to conserve judicial resources and to respect the law's important interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends that trial counsel rendered ineffective assistance by providing erroneous pre-plea advice. (*See* No. 3:19-CV-3065-L-BH, doc. 1 at 4; *see id.*, doc. 1-1 at 9-13.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence

before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

Here, Movant argues that counsel "provided affirmative misadvice" when he: (1) "informed [Movant] that he would not be subject to the increased penalties under [ACCA], which resulted in a mandatory minimum sentence of 15 years on Count One of the Indictment"; (2) "failed to inform [Movant] that the seized $9,144 in U.S. currency would be converted into methamphetamine (actual) for Guidelines purposes"; and (3) "erroneously informed [Movant] that he would receive the benefit of a reduction from the Guidelines under U.S.S.G. § 5K1.1 for his cooperation." (No. 3:19-CV-3065-L-BH, doc. 1-1 at 10-12; *see also id.*, doc. 1-2 at 1-3.) He claims that "[g]iven these misrepresentations, [Movant] was under the erroneous belief that he would be facing a far lesser sentence by pleading guilty." (*Id.*, doc. 1-1 at 12.) According to Movant, "Had I been properly advised by [counsel], I would not have pled guilty pursuant to the plea agreement and would have proceeded to trial instead." (*Id.*, doc. 1-2 at 3.)

"'[T]he negotiation of a plea bargain is a critical phase of litigation for the purposes of the Sixth Amendment right to effective assistance of counsel.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). "'When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice.'" *Id.* (quoting *United States v. Rivas-Lopez*, 678 F.3d 353, 356-57 (5th Cir. 2012)).

> Failing to properly advise the defendant of the maximum sentence that he could receive falls below the objective standard required by *Strickland*. When the defendant lacks a full understanding of the risks of going to trial, he is unable to make an intelligent choice of whether to accept a plea or take his chances in court. By grossly underestimating [the defendant's] sentencing exposure . . . , [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable.

*United States v. Grammas*, 376 F.3d 433, 436-37 (5th Cir. 2004) (citations and internal quotation marks omitted). A significant miscalculation between counsel's erroneous sentence estimate and the actual sentencing range can constitute deficient performance. *See id.* at 437 (finding that counsel was deficient for advising his client that he faced only 6 to 12 months' imprisonment if convicted based on misunderstanding of the guidelines, when he actually faced a range of 70 to 87 months).

Even assuming for purposes of this motion only that counsel rendered deficient performance in representing Movant's sentence exposure as alleged, deficient performance alone is insufficient to establish relief under § 2255. *Strickland* also requires a showing of resulting prejudice. When a movant

> adduce[s] no proof that he was promised or assured of a specific sentence, but, rather, that counsel gave him his "best estimate" of what sentence might be given if he pled guilty . . . [and when] [t]he plea agreement and the record of the change of plea hearing are replete with references to the fact that the District Court would make the determinations with respect to his sentence under the sentencing guidelines, that the District Court could decline to follow recommendations, and that no promises had been made with respect to the sentence that the District Court would impose[,]

the district court properly denies relief for lack of prejudice. *United States v. Ritter*, 93 F. App'x 402, 404-05 (3d Cir. 2004); *see also United States v. Mackay*, No. 3:04-CV-0413-D, 2007 WL 700895, at *26-27 (N.D. Tex. Mar. 6, 2007).

Movant was advised both through the plea agreement and by the Court in person that by pleading guilty to Count One, he was subjecting himself to a minimum and maximum period of imprisonment of 15 years to life if he had at least three prior convictions that qualified under ACCA. (*See* doc. 21 at 2; doc. 57 at 20-21.) He was also advised through the plea documents and at his re-arraignment that his sentence would be imposed after the Court's consideration of the sentencing guidelines, which were advisory and not mandatory, PSR, and facts heard in court, and

10

that no one could predict with certainty the outcome of the Court's consideration of the sentencing guidelines in his case. (*See* doc. 21 at 3-4; doc. 57 at 7-10.) He swore in open court that he understood he should not depend or rely on any statement or promise by anyone as to what penalty would be assessed against him, that other than the written plea agreement, no one made any promise or assurance to him to induce him to plead guilty,[4] and that the Court would determine his sentence and could impose a sentence within, below, or above the applicable guidelines range. (*See* doc. 57 at 6-10, 18-19.)

Regardless of what counsel told him about his likely sentence, Movant cannot show prejudice under *Strickland* because his plea documents and responses under oath to the Court's questioning show that he was clearly informed about and understood his maximum sentence exposure in the event he qualified under ACCA when he pled guilty to Count One under the plea agreement.[5] Additionally, a court should not "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017); *see also United States v.*

---

[4] The plea agreement did not include any reference to or provision regarding the filing of a motion for substantial assistance by the Government under U.S.S.G. § 5K1.1, or the treatment of Movant's forfeited property. (*See generally* doc. 21.)

[5] The Fifth Circuit has recognized a limited circumstance in which a movant may seek habeas relief on the basis that his attorney made alleged promises to him, even though inconsistent with representations he made in court when entering his plea. A movant is entitled to an evidentiary hearing if he presents evidence of: "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir.1998) (citing *Harmason v. Smith,* 888 F.2d 1527, 1529 (5th Cir. 1989)). A movant must produce independent indicia of the merit of the allegations of alleged promises, typically by way of affidavits from reliable third parties. *Id.* When the movant's "showing is inconsistent with the bulk of [his] conduct or otherwise fails to meet [his] burden of proof in the light of other evidence in the record," however, the Court may dispense with his allegations without an evidentiary hearing. *Id.* Here, Movant has not provided evidence of specifically where and when counsel made any promise that allegedly caused him to plead guilty or identified an eyewitness to such promise. He also has failed to provide independent indicia of the merit of an alleged promise. Even if Movant argued that counsel promised he would receive a specific sentence, he has not demonstrated entitlement to an evidentiary hearing or to § 2255 relief on this basis.

11

*Guzman*, No. 19-10783, 2021 WL 4610124, at *3 (5th Cir. Oct. 6, 2021) (per curiam) (holding that the movant "must substantiate any preference to proceed to trial—if he had been properly advised on the sentence he was facing—with 'contemporaneous evidence,' not post hoc assertions."). Movant offers nothing beyond conclusory and *post hoc* allegations of prejudice to support his claim. (*See* doc. 1-2.) Accordingly, he has failed to show a reasonable probability that he would have rejected the plea agreement and insisted on proceeding to trial in the absence of the alleged deficiencies of counsel. Movant is not entitled to § 2255 relief on this ground, and the claim should be denied.

### IV. INVOLUNTARINESS OF PLEA

Movant also contends that counsel's alleged ineffective assistance rendered his guilty pleas unknowing and involuntary. (*See* No. 3:19-CV-3065-L-BH, doc. 1 at 4; *see id.*, doc. 1-1 at 10.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'") (quoting *Brady*, 397 U.S. at 748). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)) (internal quotation marks omitted). In determining whether a plea is intelligent, "the critical issue is whether the defendant

understood the nature and substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 367 n.22 (5th Cir. 2000). "Rule 11 of the Federal Rules of Criminal Procedure requires a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Rule 11 "provides prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fisher v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749). Courts considering challenges to guilty pleas "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28. A realistic understanding of the

13

consequences of a guilty plea means that the defendant knows "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002). "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

Accepting for purposes of this motion only that counsel misrepresented or miscalculated Movant's sentencing exposure as alleged, "an erroneous estimate by counsel as to the length of sentence" does not necessarily render a guilty plea involuntary. *Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981); *see also Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002) ("a guilty plea is not rendered involuntary because the defendant's misunderstanding [of the sentence] was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed.") (emphasis in original), *abrogated on other grounds by Glover v. United States*, 531 U.S. 198 (2001); *Johnson v. Massey*, 516 F.2d 1001, 1002 (5th Cir. 1975) (holding that an attorney's "good faith but erroneous prediction of a sentence . . . does not render the guilty plea involuntary."); *accord United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary.").

As discussed, Movant's plea documents, the Court's questioning at his re-arraignment, and Movant's responses under oath demonstrate that he knew at the time he pled guilty that he was subject to a minimum and maximum period of imprisonment of 15 years to life on Count One if he had at least three prior convictions that qualified under ACCA; that he should not depend or rely on any statement or promise by anyone as to what penalty would be assessed against him; that

14

no promises or assurances were made to him to induce him to plead guilty, aside from those set forth in the written plea agreement; that the sentencing guidelines were advisory and not binding; that the Court would determine his sentence after consideration of the sentencing guidelines, a PSR, and facts heard in court; and that no one could predict with certainty the Court's consideration of the sentencing guidelines in his case. (*See* doc. 21 at 2-4, 6; doc. 57 at 6-10, 18-19.) With this knowledge, Movant still pled guilty.

Inmates who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). They must also overcome the presumption of regularity and "great weight" accorded court records. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that "official records are entitled to a presumption of regularity").

Movant has failed to overcome the presumption of verity given to his sworn statements in open court, and the great evidentiary weight accorded to court records. *See Blackledge*, 431 U.S. at 74. His contemporaneous plea documents and sworn statements before the Court contradict his claim that his guilty pleas were not voluntary because he believed ACCA would not apply to him, the $9,144 seized from his residence would not be converted into methamphetamine under the guidelines, and he would receive a sentence reduction under § 5K1.1, based on counsel's alleged representations. *See, e.g.*, *Lopez v. United States*, Nos. 3:06-CV-2342-N, 3:04-CR-0043-N (01), 2008 WL 3381759, at *6 (N.D. Tex. Aug. 5, 2008) ("That movant 'neither refused to enter his

plea nor voiced any objection when confronted with this information precludes him from arguing that he pled guilty in reliance upon some alternative characterization of his exposure given to him by his counsel.'") (quoting *United States v. Bjorkman*, 270 F.3d 482, 503 (7th Cir. 2001)).

Movant has not shown that his guilty pleas were involuntary or that he was unaware of the consequences of pleading guilty. He is not entitled to relief on this claim, and it should be denied.

## V.     EVIDENTIARY HEARING

Movant requests an evidentiary hearing before this Court on his claims. (*See* No. 3:19-CV-3065-L-BH, doc. 1-1 at 13; *id.*, doc. 7 at 4.) No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A movant "is entitled to an evidentiary hearing on his § 2255 motion only if he presents 'independent indicia of the likely merit of [his] allegations.'" *Reed*, 719 F.3d at 373 (citation omitted).

Here, Movant has failed to demonstrate the existence of a factual dispute that creates a genuine issue. He also has failed to come forward with independent indicia in support of the likely merit of his claims. *See id.* Movant has therefore failed to demonstrate he is entitled to an evidentiary hearing on any of his claims.

## VI.     RECOMMENDATION

The *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received on December 30, 2019 (doc. 1), should be **DENIED** with prejudice.

**SIGNED this 4th day of November, 2022.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE